IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| | : |
| v. | : |
| | : Case No.: 7:21-CR-52 (WLS-TQL-1) |
| | : |
| ROGER BERNARD PALMORE, JR., | : |
| | : |
| Defendant. | : |
| | : |

**ORDER**

Before the Court is Defendant Palmore's Motion to Suppress. (Doc. 20). Therein, Defendant requests the Court to "suppress all evidence, statements, and observations that were obtained as the result of the warrantless search of 123 Washington Street, Sparks, GA, as well as any fruits of that illegal search." (*Id.* at 1).

On August 31, 2022, the Court held a hearing regarding Defendant's Motion to Suppress. (Doc. 27). Present at the hearing were Defendant Palmore, Defendant's counsel, Counsel for the Government, and two witnesses for the Government, who were law enforcement officers. (*Id.*) After hearing from both Parties, the Court instructed that they may file a supplemental or post-hearing brief following the availability of the hearing transcript if they so desired. (Doc. 26). Both Parties timely filed their post-hearing brief and responses. (Docs. 28; 30; 30-1; 32).

**BACKGROUND**

Defendant Palmore was indicted on November 16, 2021, and charged with one count of Possession of a Firearm by a Convicted Felon, in violation of 18 U.S.C. § 922(g)(1) and 924(a)(1). (Doc. 1). He was arrested on February 1, 2022. (Doc. 7). Defendant's charge arises from a joint law enforcement operation that was conducted in Cook County, Georgia, on May 17, 2018. (Docs. 20; 21). The operation was led by FBI, Georgia Department of Community Supervision (DCS), and some personnel from Cook County Sheriff's Office. (Docs. 20; 21). The goal of the operation was to make contact with and search subjects who were on

1

probation and were also known gang members or were affiliated with gangs. (Docs. 21; 20). Government argued in its pre-hearing brief that Defendant was on "active probation" and a "known gang member." (Doc. 21). Specifically, Government alleges that he was a probationer who had a Fourth Amendment waiver from the time he was on probation for possessing marijuana with intent to distribute and possession of marijuana (Doc. 20; 21-1).

On the day of the joint operation, May 17, 2018, Officers had two possible addresses for Defendant: (1) 1503 Washington Post Road, Adel, GA ("Adel house"); and (2) 123 Washington Street, Sparks, GA ("Sparks house"). (Docs. 21; 20). Officers first went to the Adel house, which was the registered address for Defendant, but they could not locate him there; so, officers did not search that house, and instead, headed over to the Sparks house. (Doc. 21; 20).

Upon arriving at the Sparks house, officers knocked on the door, and Defendant and a woman named Auriel Holton answered. (Doc. 21; 20). Officers notified both Defendant and Ms. Holton that Defendant had a Fourth Amendment waiver as part of his probation conditions, and then proceeded to search the premises. (Doc. 21.) During the search, officers found Defendant's clothes and mail in that house. (Doc. 20). They also found a DMPS, A-15 rifle inside a tent bag underneath the home. (Doc. 21; 20.) According to the Cook County Sheriff's Office Incident Report (Doc. 21-2.), a check of the gun revealed it to be a stolen weapon. (*Id.*) That incident report further provides that in the master bedroom, officers also found six pages of "gang knowledge" sheets. (*Id.*) Defendant was arrested upon the discovery of the firearm. (Doc 21; 20).

## MOTION TO SUPPRESS HEARING

At the outset of the Motion to Suppress Hearing held on August 31, 2022, the Court brought up two concerns to the Parties. (Doc. 27, at 3).

First, the Court asked for clarification as to whether Defendant was actually on probation at the time the search at issue took place. (*Id.*) This is because Government had attached an expired probation sentence in its Response (Doc. 21-1), which provided that Defendant's probation sentence would last for a period of six years. It was signed on October 22, 2008, and six years from that date would have been October 22, 2014. (Doc. 21-1). The search of the Sparks house occurred on May 17, 2018. (Docs. 21; 20). Therefore, under that

2

probation sentence (Doc. 21-1), Defendant's probation terms would have expired before the time officers conducted the warrantless search of the Sparks house. But the Government explained it would use a "current sentence, 13-CR-121, [as] Government's Exhibit 4," which would show that Defendant was on probation at the time of the search and that he is still under that probation sentence (Doc. 27, at 4).

Next, the Court asked the Parties whether any Party contends "that the Defendant was subject to a search without limitations based solely on the Fourth Amendment waiver without more." (Doc. 27, at 5). The Government answered that officers "did not need probable cause" but that the Defense Counsel is "correct" in that "what probation or any officer would have needed was reasonable suspicion." (*Id.*) Both Parties agreed that "[j]ust a sheer blanket waiver, without more, without at least reasonable suspicion, wouldn't pass muster."[1] (*Id.*)

At the hearing, Government presented two witnesses: Ryan Smith, a community supervision officer, and Tom Clark, the FBI agent. (Doc. 27). Government also tendered Exhibit 4, which was a 10-year probation sentence from the Superior Court of Cook County, with docket number 13-CR-121 for Defendant's one count of serious injury by vehicle; this particular probation sentence had been filed on November 27, 2013, and so, it was still in effect "until November 26th of next year." (Doc. 27, at 10–11). Mr. Smith testified as to the conditions of that probation, and the sixth condition was that Defendant could not change his place of abode without permission of probation officer. (Doc. 27, at 14). He also stated that Defendant had a Fourth Amendment waiver as one of the special probation conditions. (Doc. 27, at 17). But even with the condition of the Fourth Amendment Waiver, Mr. Smith further explained that an officer had to "have reasonable suspicion" to conduct warrantless searches. (Doc. 27, at 17–18).

---

[1] **MR. SIMPKINS** [**for the Defendant**]: To make sure I understand the Government's position, the case law is that even with a Fourth Amendment waiver, there has to be reasonable suspicion. . . .
**THE COURT**: I think that's what she just said.
**MS. PROFIT** [**for Governmen**t] **:** It is.
**THE COURT:** Because with—if that were true, the only thing we need to decide was whether he was on probation and whether he had a waiver, there would be nothing else to hear. . . .
(Doc. 27, at 5–6).

3

Mr. Smith also testified that on May 17, 2018, the "goal" was to "conduct compliance checks to make sure that [probationers] who are identified as being part of the STG group or security threat groups. . . are in compliance with their probation." (Doc. 27, at 18). The officers were divided into teams, and "each team had a list" and "try to make contact with each supervisee that was identified on that list." (*Id.*) When asked by the Government as to whether officers had "any other evidence" linking Defendant to "any criminal activity other than the fact that he was identified in a security threat group," Mr. Smith replied that there was information about Defendant having "possibly been involved with a shooting in Lowndes County, and so that was part of the reasons." (Doc. 27, at 18-19). And when Officer Clark testified about this shooting, Officer Clark explained that there was some information about a "maroon Impala that was operated by Mr. Palmore." (Doc. 27, at 55–56). But as to the specifics of the Defendant's possible involvement with the shooting, officers testified that they did not know whether Defendant was a victim or the "specific details" of the shooting. (Doc. 27, at 24). Mr. Smith also stated that he was not sure if Defendant gave consent to search the Sparks house but that he assumed such "consent would have been obtained through the local agencies" because officers cannot "just search" the house "even with the Fourth Amendment search clause or waiver." (Doc. 27, at 28–29).

## **DISCUSSION**

Fourth Amendment provides individuals with the right to be secure in their person, home, papers, and effects against unreasonable searches and seizures and provides that warrants may only be issued for probable cause. U.S. Const. amend. IV. There are exceptions to the warrant requirement, such as consent to search or when some "special needs" make the "warrant and probable-cause requirement impracticable." *United States v. Harris*, 928 F.2d 1113, 1117 (11th Cir. 1991) ("A search conducted pursuant to a consent is a recognized exception to the requirements of a probable cause and search warrant.") *Griffin v. Wisconsin*, 483 U.S. 868, 873 (1987). One of those "special needs" is a "State's operation of a probation system." *Id.*

Although a probationer's home is protected by the Fourth Amendment, a probationer does not enjoy the same amount of liberty as other citizens. *United States v. Knights*, 534 U.S. 112, 120 (2001). The Eleventh Circuit has held that a probation condition, which subjects and requires a probationer to allow warrantless searches of his person and property, is

4

constitutional. *Owens v. Kelley*, 681 F.2d 1362, 1366 (11th Cir. 1982) (finding that a probation condition that requires probationer to submit to a search of his "person, houses, papers, and/or effects" at "any time of the day or night with or without a search warrant whenever requested to do" by "any law enforcement officer" is constitutional on its face because such condition reasonably serves the purposes of probation under Georgia law). The Eleventh Circuit has also held that reasonable suspicion of criminal conduct is necessary for officers to conduct warrantless searches of a probationer's home when there is an absence of such condition. *United States v. Riley*, 706 F. App'x. 956 (11th Cir. 2017) (quoting *United States v. Yuknavich*, 419 F.3d 1302, 1309-11 (11th Cir. 2005); *United States v. Carter*, 566 F.3d 970, 974-75 (11th Cir. 2009)). In other words, in situations where there is no Fourth-Amendment-waiver probation condition, officers can still search a probationer's home if they have reasonable suspicion to do so. *Id.*

"Reasonable suspicion" consists of a sufficiently high probability that criminal conduct is occurring, which makes the intrusion on an individual's privacy interests reasonable. *United States v. Yuknavich*, 419 F.3d 1302, 1311 (11th Cir. 2005). To determine whether officers had reasonable suspicion, courts often assess the totality of the circumstances of each case to see if the searching officer had a "particularized and objective basis for suspecting legal wrongdoing." *Id.* In other words, unparticularized suspicion or mere hunch of criminal activity is not enough to satisfy the minimum level of objectivity that is required to find "reasonable suspicion." *Id.* Officers must be able to point to specific and articulable facts, which taken together with rational inferences from those facts, reasonably warrant that intrusion. *Id.* (finding officers had reasonable suspicion to search because the facts showed that officers knew about the probationer's prior convictions; knew that the probationer was on probation; the probationer opened the door ten minutes late; but those ten minutes were not spent getting dressed as the probationer was shirtless; and the probationer acted nervous).

Here, no Party questions the validity of the probation condition that required the Defendant to have a Fourth Amendment waiver and submit to warrantless searches as a condition of probation. Instead, Defendant contends that Government used a probation sentence that expired back in 2014 to justify searching the Sparks house. (Doc. 32, at 1) ("Exhibit 1 that the Government refers to and that is attached to its Response [Doc. 30]. . .

5

sentenced [Defendant] to 6 years of probation. . .[and] was imposed October 22, 2008. . . . [it] ended on October 22, 2014. The illegal search and seizure in this case occurred on May 17, 2018, after Mr. Palmore's probation sentence. . . had expired.")

The Defendant is correct that Government attached an expired probation sentence to its Response, which already ended in 2014. (Doc. 30-1). In fact, Government had already attached this same, expired probation sentence to its pre-hearing Motion as well. (Doc. 21-1). And this was the reason the Court had to confirm with both Parties, at the outset of the Motion to Suppress Hearing, whether Defendant was on probation at the time the search occurred.[2] (Doc. 27, at 3–4). At the hearing, Government explained that there was a "current sentence 13-CR-121" to prove that Defendant was on probation at the time of the search. (Doc. 27, at 4). The current probation sentence 13-CR-121 is a 10-year probation sentence from the Superior Court of Cook County that was entered on November 27, 2013, for one count of serious injury by vehicle. (Doc. 27, at 12). Accordingly, Government tendered into evidence the current probation sentence 13-CR-121 as "Government Exhibit 4," without objection, and that current probation sentence was what officers used to conduct the search. (Doc. 27, at 4, 13, 17).

Yet, in its post-hearing Response (Doc. 30), Government did not attach that current probation sentence 13-CR-121 nor present any arguments based on that current probation sentence. Government only refers to the old, expired probation sentence that was entered in 2008. (Doc. 30-1). However, the Court still considered the current probation sentence 13-CR-121 in deciding the Defendant's Motion to Suppress (Doc. 20) because the current probation sentence was what the law enforcement officers relied on to conduct its compliance check, and it had also been properly tendered into evidence and admitted without objection. (*See* Doc. 27, at 4, 12-13). Otherwise, Government's Response (Doc. 30) would contradict its own statement as well as the testimonies of its witnesses.

---

[2]   **THE COURT:** The Court could not tell from the submissions whether this defendant was actually on probation at the time that this took place because. . . it's just not clear [based on the expired probation sentence (Doc. 21-1)].
**MS. PROFIT** [**for the Government**]: Yes, Your honor, and in my Response I used the [expired] conviction, however today, we'll be using the relevant conviction that was used at the time. . . . that will be Government's exhibit 4. . . and I think that was for ten years, and so the Defendant is currently still on probation.
(Doc. 27, at 3–4).

At the hearing, Officer Smith read some of the conditions of the current probation into evidence:

> Number one is do not violate the criminal laws of any governmental unit and be of good behavior. Number two is avoid injuries and vicious habits. Number three is avoid persons or places of disreputable or harmful character. Number four is report to the probation officer as directed and permit the probation officer to visit you at home or elsewhere. Number five is work faithfully at suitable employment insofar as may be possible. Number six is do not change your place of abode, move outside the jurisdiction of the court or leave the state of Georgia without permission of the probation officer.

(Doc. 27, at 14) (conditions of the current probation sentence, 13-CR-121).

Officer Smith also testified that Defendant had a "Fourth Amendment waiver" in the current probation sentence, listed under "special condition Number Ten." (Doc. 27, at 17). According to Officer Smith, that probation condition meant that " [a probationer] can be searched without having a search warrant *as long as* [officers] have a *reasonable suspicion* that they're in violation of their condition or the law." (Doc. 27, at 17) (emphases added).

Nevertheless, in its post-hearing Response brief (Doc. 30), Government argued that reasonable suspicion is not necessary when a probation condition requires the probationer to subject to warrantless search. (Docs. 30, at 3; 30-1, at 2) (citing to *Owens v. Kelley*, 681 F.2d 1362, 1367 (11th Cir. 1982)). Government cites to one of the conditions from Defendant's old probation sentence that was expired in 2014 (Docs. 21-1; 30-1) to argue that it allowed officers to not have to rely on reasonable suspicion or obtain a consent to search the home. (Doc. 30, at 4). This probation condition from the expired probation sentence requires the Defendant to:

> allow, permit, and consent for Probation Officer or any law enforcement officer to search his/her person, vehicle, and premises he/she occupies at anytime without a search warrant and without probable cause, not object to any items seized during any search being admitted into evidence during any Court, Trial, hearing, or proceeding.[3]

---

[3] This is a probation condition similar to the one that the Eleventh Circuit found to be constitutional in *Owens*. 681 F.2d at 1366. Therefore, the Court accepts that this probation term is constitutional, but this specific probation term does not apply here because this probation sentence expired back in 2014. (Docs. 32, at 1; 27, at 4).

7

(Doc. 30-1, at 2).

But this is *not* the probation sentence that was in effect at the time of the search in 2018 because this probation sentence expired back in 2014. (*See* Doc. 27, at 17 & 29). Instead, the current probation sentence 13-CR-121 was the one in effect when the search occurred. (Doc. 27, at 4). And although the current probation sentence may contain a Fourth-Amendment-Waiver condition, officers at the hearing clearly explained that they still needed to have either reasonable suspicion or consent to conduct warrantless searches. (Doc. 27, at 17, 29). Therefore, the Court finds that officers still needed to obtain consent or have reasonable suspicion to search Defendant Palmore's house. And this finding is also consistent with officers' testimonies and Government's stipulation made at the hearing. (*See* Doc. 27).

I. **Government Failed to Prove Consent was Obtained to Search the House.**

As to consent, the Court rejects officers' contention that they assumed consent was obtained for them to search Defendant's house because officers would not have searched the house otherwise. (Doc. 27, at 29, 51–52, 64). Officers' assumption—that consent was given because searching a probationer's home normally requires obtaining consent to search before doing so—is not the same as having proven that Defendant actually gave consent. Thus, the Court finds the Government failed to prove that officers actually obtained consent from Defendant or Ms. Holton to search the Sparks house.

II. **Nevertheless, Officers Had Reasonable Suspicion to Search the Residence.**

Although Government contended that no reasonable suspicion or consent was necessary in this case, Government also argued that officers nonetheless had reasonable suspicion to conduct a search. (Doc. 30, at 5). To show there was reasonable suspicion, the Government argued the following: Defendant was "not residing at his registered address" in Adel house. (*Id.*) Instead, Defendant was "found living with the mother of his child" at Sparks house. (*Id.*) Additionally, "law enforcement officers noticed bullet holes in a maroon Impala when they were searching for the Defendant" at Sparks house. (*Id.*) And "through the collective knowledge of law enforcement," Defendant and the vehicle were "suspected of being involved in a shooting at Club Dejavu in Valdosta." (*Id.* at 5–6). Moreover, Defendant had already been "validated by the Georgia Department of Corrections" as a member of a gang. (*Id.* at 6). Accordingly, Government argues that the search was constitutional because

8

there was "enough [information] to give law enforcement officers reasonable suspicion that the Defendant was or had been involved in criminal activity." (*Id.*)

Reasonable suspicion must be more than "an inchoate and unparticularized suspicion or hunch." *United States v. Acosta*, 363 F.3d 1141, 1145 (11th Cir. 2004). But reasonable suspicion is "less demanding" than probable cause and requires a showing that is "considerably less than preponderance of the evidence." *Jackson v. Sauls*, 206 F.3d 1156, 1156 (11th Cir. 2000). Simply put, reasonable suspicion only requires a "minimal level of objective justification for making the stop." *Id.*; *United States v. White*, 593 F.3d 119, 1203 (11th Cir .2010) (finding that the smell of marijuana alone was sufficient to provide reasonable suspicion that justifies further investigation of possible criminal conduct); *United States v. Collins*, 683 F. App'x 776, 779 (11th Cir. 2017) (explaining that numerous or various facts are not necessary to establish reasonable suspicion, and that reasonable suspicion exists if facts and rational inferences from those facts, taken together, can provide a particularized objective for officers to suspect that a probationer was engaged in misconduct).

The Court agrees with the Government and finds that officers had reasonable suspicion to search the residence. The Court finds that officers acquired reasonable suspicion that Defendant was possibly violating his probation terms when he was not found in the Adel house. The Court also agrees that officers acquired reasonable suspicion when they went to check the Sparks house and noticed a maroon Impala, operated by Defendant, which officers knew had been involved in a shooting at a club in Valdosta in some way, parked in front of the Sparks house. Officers also knew that Defendant was a member of a gang.

Taking these facts and rational inferences together, the Court finds that officers had reasonable suspicion of Defendant's possible violation of probation terms and/or engagement in criminal activity, which permitted officers to search the residence without a search warrant. (Doc. 27, at 17) ("[Under the Fourth-Amendment-Waiver condition in the current probation sentence], [probationers] can be searched without having a search warrant as long as [officers] have reasonable suspicion that they're in violation of their probation condition or the law."); *see also United States v. Wasser*, 586 Fed. App'x 501, 505 (11th Cir. 2014) (finding that officers' search of the defendant-probationer's residence was permissible because officers had reasonable suspicion of the defendant possibly conducting criminal activity or violating his

9

probation terms and had knowledge of the defendant's involvement in the gang; thus, officers' reasonable suspicion justified the warrantless search of the defendant's residence to look for additional violations).

Accordingly, Defendant Palmore's Motion to Suppress (Doc. 20) is **DENIED**.

**SO ORDERED**, this   6th    day of December 2022.

                                             /s/ W. Louis Sands
                                             **W. LOUIS SANDS, SR. JUDGE**
                                             **UNITED STATES DISTRICT COURT**